### The Calista Hawes.*

(*District Court, E. D. New York.* December 4, 1882.)

NEGLIGENCE IN HOISTING BARREL—PERSONAL INJURY—LIABILITY.

Where an assistant United States weigher, whose duty it was to keep tally of a vessel's cargo while it was being discharged, was required to be about the main hatch on the main deck of the vessel, and the mate undertook to hoist a barrel from the pier on the opposite side of the vessel from that on which the cargo was being discharged, with the tackle and fall employed to raise the cargo from the hold, which was so arranged that the barrel was swung across the deck in spite of the efforts of two men stationed on the rail to assist in getting the barrel to the deck, and the barrel, while so swinging, struck the weigher, who was standing on the deck with his back turned to the rail, and knocked him over the combings of the hatch into the lower hold, no warning having been given him in time to enable him to move, *held*, that the libelant's injuries arose from a neglect on the part of the owner of the ship to discharge

*Reported by R. D. & Wyllys Benedict.

a duty arising on navigable water out of the employment of the ship as an instrument of commerce, and owing to the libelant, and that the vessel was liable for the injuries resulting, and there must be a reference to ascertain the amount.

In Admiralty.

*Beebe, Wilcox & Hobbs,* for libelant.

*Butler, Stillman & Hubbard,* for the vessel.

BENEDICT, D. J. The facts of this case are not in doubt:

The libelant, William G. Vance, was an assistant United States weigher, whose duty it was to keep tally of the cargo of the ship Calista Hawes, while that vessel was discharging her cargo in this port. The cargo consisted of iron ore, and was discharged into a lighter lying along-side the ship on her starboard side. The libelant, in order to a proper discharge of his duty, was required to be about the main hatch upon the main deck of the vessel. During a short cessation of, the discharge of the cargo, the mate of the vessel undertook to raise from the pier on the port side of the vessel to the deck of the vessel a barrel of tar. He used for this purpose the tackle and fall employed to raise the cargo from the hold. This tackle and fall were attached to a span rigged to the masts over the main hatch, the span being fastened by a guy-rope on the starboard side, so that it could not swing to port, but would raise the weight over the center of the hatch. The mate, without loosing the guy by which the span was guyed to starboard, carried the fall over the port side of the ship to the pier, and then attached it to the barrel of tar, and by horse-power raised the barrel above the rail. No guy-rope had been attached to the barrel, but two men were stationed on the rail to assist in getting the barrel to the deck. The result of this method of proceeding was that the barrel, when raised by the horse, as soon as it cleared the rail, and in spite of the efforts of the men on the rail, was pulled by the power of the horse across the deck from the rail to the hatch. At the time the barrel was thus pulled across the deck, the libelant and another man were standing on the deck between the rail and hatch near to the combings, with their backs to the rail and directly in the course taken by the barrel. Both men were struck by the barrel as it passed across the deck. One was not injured, but the libelant was knocked over the combings of the hatch and into the lower hold. No warning was given to the libelant in time to enable him to move from his position.

Upon these facts the liability of the ship is clear. The libelant's injuries arose from a neglect on the part of the owner of the ship to discharge a duty arising on navigable water out of the employment of the ship as an instrument of commerce, and owing to the libelant. The mate was in charge of the ship. His neglect was in law the neglect of the owner. It was the duty of the mate so to hoist the barrel as to prevent it from being pulled by the power of a horse across the deck where the libelant was standing. This duty was neglected

when the barrel was hoisted with the span so guyed that the barrel, when raised by the power of the horse above the rail, would be drawn by the same power out of the hands of the men on the rail and across the deck. The duty thus neglected arose upon navigable water, out of the employment of the vessel as an instrument of commerce. The case is similar in principle to the case of *The Kate Cann*, decided by this court and affirmed by the circuit court, 2 FED. REP. 241; 8 FED. REP. 719.

The libelant was guilty of no negligence. He was standing where he had the right to stand in the discharge of his official duty. If he could be chargeable with knowledge that the barrel was being hoisted from the pier at that place, he had the right to assume that it would not be pulled across the deck where he was, and no notice to the contrary was given him.

There must, therefore, be a decree in favor of the libelant, with an order of reference to ascertain the amount.